UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL MALDONADO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Case No. ED CV 10-1480 JCG

**MEMORANDUM OPINION AND ORDER**

## I.

## **INTRODUCTION AND SUMMARY**

On October 13, 2010, plaintiff Michael Maldonado ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 3.]

On April 8, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 11, 12, 13.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is substantial evidence in the record, taken as a whole, to support the decision of the

Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 46 years old on the date of his administrative hearing, has an associate degree in telecommunications. (*See* Administrative Record ("AR") at 27, 32-33, 93, 121.)

On August 22, 2008, Plaintiff protectively filed for SSI, and on September 16, 2008, filed for DIB, alleging in both applications that he has been disabled since July 7, 2008 due to diabetes and depression. (*See* AR at 11, 63-66, 67, 74, 98, 113, 116.)

On April 21, 2010, Plaintiff, proceeding *pro se*, appeared and testified at a hearing before an ALJ. (*See* AR at 27-62.) Victoria Ray, a vocational expert ("VE"), also testified. (*Id.*)

On May 28, 2010, the ALJ denied Plaintiff's request for benefits. (AR at 11-18.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (*Id.* at 13.)

At step two, the ALJ found that Plaintiff suffers from severe diabetes mellitus. (AR at 13.)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairment, either individually or in combination, met or medically equaled the severity of any listing set forth in the Social Security regulations.[1] (AR at 15.)

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155

determined that he can perform medium work, with the following specifications: "lift and carry 50 pounds occasionally, 25 pounds occasionally; no sitting, standing or walking limitations; avoid climbing ladders, ropes, or scaffolds; no twisting; moderate pain symptoms that are controlled with medication; slight problems with fatigue; and slight loss of concentration, memory and focus due to the alleged mental impairments." (AR at 15 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff has the ability to perform his past relevant work as a car detailer, gaming dealer, and automobile driver. (AR at 17-18.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 11, 18.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 4.) The ALJ's decision stands as the final decision of the Commissioner.

### III.

### **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

---

n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly found that Plaintiff's mental impairments are not severe, (*see* Joint Stip. at 3-6, 9); and

2. whether the ALJ properly developed the record. (*Id.* at 9-12.)

The Court addresses both arguments collectively.

## V.
## DISCUSSION AND ANALYSIS

Plaintiff makes two interconnected arguments. First, he contends that "the ALJ failed to consider the severity of the Plaintiff's mental impairments, which clearly indicate significant ramifications for the plaintiff's ability to function in a normal work environment." (Joint Stip. at 3.)

Second, Plaintiff maintains that "upon a thorough review of the entire record, the mental health treatment records regarding plaintiff's treatment with [Myong-

Won Kim, M.D. ("Dr. Kim")] are missing from the record" and "because the plaintiff was unrepresented at the hearing, the ALJ had a heightened duty to properly develop the record, but failed to do so." (Joint Stip. at 9-10.) Plaintiff argues that "this missing information could give the ALJ the additional medical evidence necessary to further determine whether plaintiff has a severe mental impairment." (*Id.* at 10.)

### A. Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step two inquiry is defined as "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider *the combined effect* of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (emphasis added).

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[3] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433

---

[3] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

5

F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[4] 1985 WL 56856, at *3).

In addition, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at *4) (brackets omitted).

    B.    <u>The ALJ's Failure to Find Plaintiff's Mental Impairments Severe at Step Two Was Harmless Error and the ALJ Did Not Fail to Develop the Record</u>

Any error in the ALJ's failure to include depressive disorder or obsessive compulsive disorder as part of Plaintiff's severe impairments at step two of the analysis was harmless. This Court's decision is grounded on five reasons.

First, step two was already resolved in Plaintiff's favor, *e.g.*, the ALJ found Plaintiff's diabetes mellitus to be severe and properly continued the sequential decision making process until reaching a decision at step four. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Taylor v. Astrue*, 2010 WL 2773337, at *2-*3 (D. Or. 2010) (any error in failing to designate plaintiff's additional impairments as not severe did not prejudice him at step two, as step two was resolved in plaintiff's favor because ALJ found plaintiff had demonstrated several impairments necessary to satisfy step two).

---

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

Second, even assuming the ALJ erred in overlooking to list Plaintiff's mental impairments as severe at step two, any error was harmless because the ALJ, in fact, considered his mental impairments while assessing his limitations. (*See* AR at 15-17); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007, *as amended* Aug. 16, 2007) (concluding any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four). In determining Plaintiff's RFC, the ALJ found that he suffers from "slight loss of concentration, memory and focus due to the alleged mental impairments." (AR at 15.) The ALJ also considered Plaintiff's mental impairments in posing hypotheticals to the VE and in his determination that Plaintiff is able to perform his past relevant work. (*See id.* at 17-18, 55-58.)

Third, the Court is persuaded that the ALJ considered all the medical evidence regarding Plaintiff's mental impairments and properly concluded that Plaintiff does not suffer from depression or obsessive compulsive disorder such that it would have more than a slight effect on his ability to perform basic work activities. (*See* AR at 13-15.) Although Plaintiff mainly points to Dr. Kim's opinion as evidence that his "mental impairments . . . have more than a minimal effect on his ability to do basic work activities," (Joint Stip. at 3), Dr. Kim did not opine that Plaintiff's mental impairments imposed any functional limitations. On May 26, 2009, Dr. Kim completed a Mental Disorder Questionnaire Form, which Dr. Kim submitted as a substitute for a "narrative report." (AR at 263-67.) In the form, Dr. Kim indicated that he has treated Plaintiff in relation to his mental impairments since May 21, 2008 and diagnosed him with major depression and obsessive compulsive personality. (*Id.*)

However, Dr. Kim also opined that Plaintiff is of "average intelligence," has "no perceptual disturbance" or "thought disorder," his "reality control is intact," he is "able to interact [with] his friends," and his "concentration is fair." (AR at 264-66.) Dr. Kim reported that while Plaintiff's "affect was depressed [and] withdrawn"

and his "motivation and energy" were low "in the beginning," he has "improved" with treatment and is capable of properly caring for his personal affairs, shopping, cooking, using public transportation, paying bills, maintaining his home, caring for his personal grooming and hygiene. (*Id.* at 265.) Dr. Kim noted that Plaintiff "does some business on [the] internet," has no history of psychiatric hospitalization, and concluded that his prognosis is "fair." (*Id.* at 263, 266-67.)

Further, a review of the record indicates that Plaintiff's own statements support Dr. Kim's findings and the ALJ's conclusion. For instance, at the administrative hearing, Plaintiff testified that he performs "any light housekeeping" or "cleaning up or anything like that." (AR at 39.) Plaintiff stated that he has friends and will "go on like these small day trips . . . with them." (*Id.*) Plaintiff also reported that his hobbies include watching television, listening to the radio, and playing hand-held video games. (*Id.* at 41-42.)

In his Adult Function Report, Plaintiff indicated that he spends his afternoons "doing errands, cleaning, [and] looking for work." (AR at 139.) He stated that he is able to prepare his own meals, and while it may "take a long time to select an item," he is able to shop for groceries, clothing, and household items and goes outside "a few times per day." (*Id.* at 141-42.) Accordingly, Plaintiff's statements concerning his activities of daily living suggest that he is quite functional and the ALJ properly discounted Plaintiff's subjective complaints of disability, a finding which Plaintiff does not contest here. (*See id.* at 16-17; *see generally* Joint Stip. at 1-15.)

Fourth, with respect to Plaintiff's argument that the ALJ erred by not discussing his global assessment of functioning ("GAF") scores[5] of 35 and 45, the

---

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 2000).

8

Court does not find any error. (Joint Stip. at 3-4; *see also* AR at 186, 225.) "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected") (internal citation and quotation marks omitted).

Further, both GAF scores are not supported by objective evidence and are inconsistent with the findings in the treatment notes. *See also Graham v. Barnhart*, 76 Fed.Appx.829, 830 (9th Cir. 2003) (finding physician's opinion was properly rejected where GAF score was not supported by objective evidence and was inconsistent with findings in report). On May 21, 2008, Dr. Kim opined a GAF score of 45. On the same day, Dr. Kim also found that Plaintiff's appearance, hygiene, speech, perceptual process, memory and thought process and content were all within normal limits. (*See* AR at 224-25.) Dr. Kim assessed Plaintiff's insight and judgment as fair and that he was oriented as to person, place, time, and situation. (*Id.*) Similarly, the treatment note, dated March 6, 2008 and opining the GAF score of 35, fails to include any evidence supporting a more restrictive mental RFC assessment than the one determined by the ALJ. (*See generally id.* at 183-86.)

---

A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV at 34 (bold and capitalization omitted).

A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34 (bold and capitalization omitted).

Moreover, although the ALJ did not expressly discuss the GAF score of 45, as explained above, he properly assessed Dr. Kim's opinion, which included the GAF score. Thus, the ALJ properly evaluated the medical evidence and did not err in failing to explicitly discuss the GAF scores.

Fifth, Plaintiff's argument that the "ALJ has erred by not obtaining [Dr. Kim's missing records from the end of 2008 through at least May 26, 2009]" is without merit. (*See* Joint Stip. at 9-10.) The ALJ's duty to recontact a treating physician is triggered only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

Here, the record before the ALJ was not ambiguous or inadequate to allow for a proper evaluation of the medical evidence, nor did the ALJ find the record to be unclear. (*See generally* AR at 11-18); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (no duty to recontact physician whose report was not ambiguous). Given that Dr. Kim's treatment records and the submitted questionnaire form indicated only mild mental limitations *at best* and provided the ALJ an adequate record for determining Plaintiff's mental RFC, there is no basis for asserting that the ALJ failed in his duty to develop the record.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

Dated: June 28, 2011

_____
Hon. Jay C. Gandhi
United States Magistrate Judge